DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Robert E. Gibson, appeals his convictions in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On December 19, 2006, just after midnight, a masked man held a gun to the back of Shakera Mullen's head and demanded her purse as she searched for the key to the front door of her Parklane Avenue apartment in Akron. A neighbor witnessed the robbery from the window of his second floor bathroom, and his girlfriend called 911. As the neighbor watched, the robber sped away in Ms. Mullen's 1999 Ford Taurus. Akron Police located the vehicle within minutes, and the driver led law enforcement officers from three jurisdictions on a high *Page 2 
speed chase through downtown Akron, the North Hill neighborhood, Fairlawn, and Richfield. Along the way, the driver ran numerous stoplights, rammed a police vehicle, reached speeds in excess of 100 miles per hour, and drove south in the northbound lanes of a major four-lane road. The chase ended when Richfield police executed a "pit maneuver" that forced the driver to crash. Defendant, who was the driver of the vehicle, fled on foot. After scaling a twelve-foot fence and running into a wooded ravine, he was arrested by Richfield police officers.
 {¶ 3} Following a jury trial, Defendant was convicted of (1) aggravated robbery in violation of R.C. 2911.01(A)(1), with a firearm specification; (2) robbery in violation of R.C. 2911.02(A)(2); (3) failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B); (4) possession of a weapon under disability in violation of R.C. 2923.13(A)(2); (5) grand theft in violation of R.C. 2913.02(A)(1) and (A)(4); (6) carrying a concealed weapon in violation of R.C. 2923.12(A)(2); (7) felonious assault in violation of R.C. 2903.11(A)(2); and (8) vandalism in violation of R.C.2909.05(B)(2). The trial court sentenced Defendant to an aggregate twenty years of imprisonment and to five years of postrelease control. This appeal followed.
 ASSIGNMENT OF ERROR I "The trial court's judgment is against the manifest weight of the evidence and is unsupported by the evidence."
 ASSIGNMENT OF ERROR III *Page 3 "The judgment for felonious assault is against the manifest weight of the evidence and is not supported by the evidence."
 {¶ 4} In his first assignment of error, Defendant argues that his convictions for the offenses described above are based on insufficient evidence and are against the manifest weight of the evidence because there was no direct evidence at trial that identified him as Ms. Mullen's assailant. In his third assignment of error, Defendant maintains that his conviction for felonious assault is based on insufficient evidence and is against the manifest weight of the evidence for the additional reason that, even assuming that his identity was established, the evidence does not support the conclusion that he caused serious physical harm to any person or property.
 Standards of Review {¶ 5} When reviewing a trial court's denial of a Crim.R. 29 motion, this Court assesses the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996), 115 Ohio App.3d 646,653. "In essence, sufficiency is a test of adequacy." State v.Thompkins, 78 Ohio St.3d 380, 386.
 {¶ 6} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge *Page 4 
questions whether the [S]tate has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 Identity {¶ 7} Defendant maintains that his convictions are against the manifest weight of the evidence because no witnesses could identify him directly as Ms. Mullen's assailant. Specifically, he argues that the evidence suggests that he was not the perpetrator or, in the alternative, that there could have been more than one person involved in the crime. *Page 5 
 {¶ 8} Direct and circumstantial evidence do not differ in terms of their probative value. State v. Treesh (2001), 90 Ohio St.3d 460, 485, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Consequently, identity may be proved by direct or circumstantial evidence. See State v. Flynn, 9th Dist. No. 06CA0096-M,2007-Ohio-6210, at ¶ 12, citing State v. Gorgan (Jan. 10, 1990), 9th Dist. No. 1824, at * 1. "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identifying the defendant are matters affecting the weight of the evidence." Flynn at ¶ 12.
 {¶ 9} Ms. Mullen's neighbor, Mark Gilbert, watched the robbery from his second story bathroom window. He testified that he saw the robber back up Ms. Mullen's driveway with a gun drawn, get into Ms. Mullen's vehicle, and drive away. As Mr. Gilbert watched, the driver turned left onto Garth Avenue and right onto Diagonal Road. Mr. Gilbert's girlfriend, Yvonne Reed, placed a call to 911 that was received at 12:28 a.m. Akron Police Officer Todd Hough testified that within minutes, a dispatch describing Ms. Mullen's vehicle was made and officers Jamie Rea and Pat Didyk responded. Officer Rea testified that from his location at the intersection of Mercer and Diagonal Roads, he and his partner, Officer Didyk, saw the vehicle within two or three minutes of the 911 call. Officer Didyk confirmed that the two initiated pursuit at 12:32 a.m. Officers Rea and Didyk pursued the vehicle south onto Interstate 76, north through downtown Akron, then *Page 6 
toward Market Street on North Street. When the chase reached Market Street and approached the busy intersection of Market Street and Hawkins Avenue, the officers were ordered to abandon the chase in the interest of safety.
 {¶ 10} As the Akron Police Department provided a description of the vehicle by radio, Patrick Severs of the Fairlawn Police Department spotted the car headed westbound on Market Street and picked up the chase. Officer Severs testified that he pursued the vehicle at a "high rate of speed" through Fairlawn and onto Interstate 77. Shortly thereafter, he also abandoned pursuit in the interest of safety. The chase was almost immediately resumed by members of the Richfield Police Department, who pursued the vehicle north on Interstate 77 at speeds as high as 110 miles per hour. At exit 146, they successfully deployed "spike strips" in order to slow the vehicle. When the driver ran a red light at the end of the exit ramp and drove south on Brecksville Road, Officers Robert Gaydosh and Nick Kostandaras followed. Both testified that the driver swerved into the northbound lanes and drove against traffic at speeds of fifty to sixty miles per hour. The Officers attempted to "box" the driver in with their own vehicles in order to reduce his speed and prevent a collision with oncoming traffic. In the process, the driver rammed Kostandaras's vehicle and continued to drive south in the northbound lanes.
 {¶ 11} Officer Gaydosh testified that he executed a "pit maneuver" to force the vehicle to stop. He recalled that this tactic caused a collision between the *Page 7 
driver and his own vehicle before the chase ended. Officer Gaydosh testified that he saw the driver climb from the driver's seat to the back passenger seat before exiting the vehicle through the back passenger door. He and Officer Kostandaras pursued the driver on foot and, ultimately, cornered him in a ravine. Officer Gaydosh found Ms. Mullen's purse and belongings in the vehicle, along with an operable firearm. Officers Gaydosh and Kostandaras identified Defendant as the man that they arrested at the conclusion of the chase.
 {¶ 12} The evidence, although circumstantial, did not weigh heavily in favor of the conclusion that someone other than Defendant committed the crimes. Instead, the timeline of events leading to Defendant's arrest after fleeing Ms. Mullen's vehicle on foot support the conclusion that Defendant robbed Ms. Mullen, stole her car, and was in possession of it until he was apprehended in Richfield. We cannot say that the jury clearly lost its way in determining that Defendant committed the crimes with which he was charged. Because Defendant's convictions were not against the manifest weight of the evidence, we conclude that they were also based on sufficient evidence of identity.
 Felonious Assault {¶ 13} Defendant also argues that his conviction for felonious assault was based on insufficient evidence and was against the manifest weight of the evidence because, he maintains, the evidence produced at trial did not demonstrate that he knowingly caused serious physical harm to any person or property. This argument *Page 8 
is based on the assumption that Defendant was charged with a violation of R.C. 2903.11(A)(1). Defendant, however, was charged under R.C.2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Serious physical harm is not required.
 {¶ 14} Physical harm to a person includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A). An automobile may be used as a deadly weapon for purposes of this statute. State v. Davidson (June 20, 1990), 9th Dist. No. 89CA004641, at *2. See, also, Gay desk v. Gaydesh, 168 Ohio App.3d 418,2006-Ohio-4080, at ¶ 16; State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 12. "In determining whether an automobile is a deadly weapon, a court should not only consider the intent and mind of the user, but also the nature of the weapon, the manner of its use, the actions of the user, and the capability of the instrument to inflict death or serious bodily injury." State v. Upham (May 12, 1997), 12th Dist. No. CA96-08-157, at *2.
 {¶ 15} In this case, Sgt. Kostandaras testified that he pulled his marked sport utility vehicle alongside Defendant in an effort to force the car to stop as Defendant drove south in the northbound lanes of Brecksville Road. Sgt. *Page 9 
Kostandaras recalled that as he did so, Defendant drove into the driver's side of the SUV, sideswiping it with the passenger side of Ms. Mullen's vehicle. Officer Gaydosh, who was positioned behind Defendant in the pursuit, described the incident:
 "Q: And what happened then once your sergeant was involved in the pursuit as well?
 "A: What we were able to do was there was a semi truck coming at us on one of the turns and it saw us so it started to slow down. We had the vehicle boxed over what would be — we're still going southbound in the northbound lane, but we were able to get it over to the far berm or the grass area a little bit. The vehicle then made a motion toward the semi which caused the semi to take a hard right and go off the road, and then I tried to get in position to box him at which point in time I turned and he rammed my supervisor's vehicle to get him out of the way so he could continue southbound in the northbound lanes."
Defendant used Ms. Mullen's vehicle to ram the driver's side of a police car during a high speed pursuit. We cannot say that the jury lost its way and created a manifest miscarriage of justice by determining that Defendant used Ms. Mullen's vehicle as a weapon against Sgt. Kostandaras. His conviction for felonious assault is supported by the weight of the evidence and, consequently, is based on sufficient evidence as well.
 {¶ 16} Defendant's first and third assignments of error are overruled.
 ASSIGNMENT OF ERROR II "The trial court erred and violated the Defendant's right to remain silent in giving its instruction as to the issue of flight." *Page 10 
 {¶ 17} In his second assignment of error, Defendant has argued that the trial court erred by providing the jury with a flight instruction that established a presumption of guilt and invited the jury to consider Defendant's decision not to testify on his own behalf The trial court instructed the jury as follows:
 "Now, it is not necessary that the defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that the defendant did not testify must not be considered for any purpose.
 * * *
 "In this case, there has been evidence tending to indicate the defendant fled from the police. You are instructed that flight in and of itself does not raise a presumption of guilt. However, it tends to show consciousness of guilt or guilty connection with an alleged crime. If you find the defendant did flee from the vicinity of an alleged crime, you may consider the circumstances in determining guilt or innocence of the defendant. Upon you alone rests the decision of what weight, if any, to give to this evidence."
 {¶ 18} The propriety of jury instructions is reviewed for an abuse of discretion. Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable — not merely an error of law or judgment. See State v. Adams (1980),62 Ohio St.2d 151, 157. Evidence of flight is admissible because it tends to demonstrate consciousness of guilt, and a flight instruction is appropriate if supported by the evidence in the record. State v.Villa, 9th Dist. No. 05CA008773, 2006-Ohio-4529, at ¶ 29. A flight instruction is improper, however, if it communicates a mandatory presumption of guilt or compromises the right of the accused to remain silent. See State v. Taylor (1997), *Page 11 78 Ohio St.3d 15, 27. An instruction that requires a defendant to satisfactorily explain flight is impermissible. See State v. Fields
(1973), 35 Ohio App.2d 140, 144-45. An instruction regarding satisfactory explanation of flight without specific reference to explanation by the defendant, however, is permissible when the jury is also instructed regarding the defendant's right not to testify.State v. Brady, 9th Dist. No. 22034, 2005-Ohio-593, at ¶ 9. In that situation:
 "Because the `unless satisfactorily explained' language is in the passive voice and no actor is specified, one is left to speculate as to who may reasonably provide the explanation, if that language is viewed in isolation. However, when the entirety of the jury instruction is considered, a conscientious juror would abide by the instruction that defendant's silence cannot be used for any purpose. It is presumed that the jury followed the court's instructions. Thus, to the extent the instruction on flight suggested that defendant was required to personally explain his apparent flight, that suggestion was abated by the court's instruction regarding defendant's right not to testify and the fact that defendant did not testify could not be used for any purpose. Therefore, the jury instructions, considered as a whole, did not require defendant to personally explain his actions, nor did the instructions create an improper mandatory presumption." State v. Morris, 10th Dist. No. 05AP-1032, 2007-Ohio-2382, at ¶ 74.
 {¶ 19} The trial court's flight instruction in this case, when viewed in the context of the entire instruction, is not an arbitrary, unreasonable, or unconscionable exercise of the court's discretion. The trial court instructed the jury that it could not consider Defendant's decision not to testify in his own defense for any purpose. As noted inTaylor, the instruction did not establish a mandatory presumption of guilt. Taylor, 78 Ohio St.3d at 27. Finally, the trial court omitted reference to a satisfactory explanation for Defendant's flight *Page 12 
entirely, and in doing so instructed the jury in manner even more conservative than this Court found proper in Brady. Defendant's second assignment of error is, therefore, overruled.
 {¶ 20} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 13 
 WHITMORE, J., MOORE, P. J., CONCUR *Page 1