[Cite as *State v. Brown*, 2013-Ohio-2665.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26409 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT D. BROWN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 10 2767 |

DECISION AND JOURNAL ENTRY

Dated: June 26, 2013

CARR, Presiding Judge.

**{¶1}** Appellant, Robert Brown, appeals his conviction for aggravated robbery with a firearm specification. Because Brown's conviction is against the manifest weight of the evidence, this Court reverses and remands for a new trial.

I.

**{¶2}** On September 3, 2011, someone robbed the EuroGyro restaurant's "chuck wagon" at gunpoint. The robber wore a mask that obscured the lower half of his face and was dressed as though he had been playing basketball. A EuroGyro employee estimated that the robber was about his own weight, but shorter. The employee could not identify a suspect from a photo array.

**{¶3}** With no leads to go on, the police turned to reports of recent arrests within a one-block radius of the robbery. Investigating officers learned that Brown, who "relatively matched" the description given by the EuroGyro employee, had been arrested two times in the

neighborhood. Both times, he had been in possession of a firearm. That information led police to arrest him in connection with the EuroGyro robbery. He was charged with two counts of aggravated robbery accompanied by firearm specifications and found guilty of one of the charges after a bench trial. The trial court sentenced Brown to six years in prison. Brown appealed, raising two assignments of error. Because his second assignment of error is dispositive of this appeal, we address it first.

## II.

### ASSIGNMENT OF ERROR II

THE CONVICTIONS OF THE TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THE CONVICTIONS BEYOND A REASONABLE DOUBT.

{¶4} Brown's second assignment of error argues that the State did not produce sufficient evidence demonstrating that he was the man who robbed EuroGyro and that even if the evidence was sufficient, his conviction is against the manifest weight of the evidence. With respect to the weight of the evidence, we agree.

{¶5} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. No. 24731, 2009–Ohio–6955, at ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶6} The identity of a perpetrator must be proved by the State beyond a reasonable doubt. *State v. Flynn*, 9th Dist. No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. As with any other element, identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *State v. Gibson*, 9th Dist. No. 23881, 2008-Ohio-410, ¶ 8. A reviewing court, however, cannot "fill in the blanks" when the State fails to produce evidence related to an essential element of an offense. *Akron v. Garrett*, 9th Dist. No. 24412, 2009-Ohio-1522, ¶ 12, quoting *State v. Heinish*, 50 Ohio St.3d 231, 239 (1990).

{¶7} In this case, the evidence presented by the State would permit a trier of fact to conclude beyond a reasonable doubt that Brown committed the crimes. Benjamin Poole, an employee of EuroGyro, testified that he was working in the chuck wagon on September 3, 2011, when the restaurant was robbed. Mr. Poole described the robber as a black male dressed as if he had been playing basketball. The robber wore a mask on the lower half of his face.

{¶8} Akron Police Detective Robert Richardson testified that because there were no leads to follow with respect to the robbery, he looked for possible suspects by reviewing "field interviews" of individuals arrested near EuroGyro. In the course of his review, he discovered that Brown had been arrested twice within a block radius of the robbery while in possession of a firearm. Although Brown has challenged the admission of this testimony as other acts evidence under Evid.R. 404(B), we must consider all of the evidence presented in evaluating the sufficiency of the evidence. *See generally State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 20, citing *Lockhart v. Nelson*, 488 U.S. 33, 40-41 (1988). According to Detective Richardson, Brown "relatively matched" Mr. Poole's description of the robber. In this respect, the parties stipulated that Brown is left-handed, and an employee of the Summit County Sheriff's Office testified that according to Brown's booking sheet, he is five feet eleven inches tall.

{¶9}    Detective Michael Klein, an expert in forensic video image analysis, testified about his expertise in his field, his methodology, and his observations after viewing the surveillance video related to this case. Detective Klein noted two "possible identifiable features" that the robber shared with the known images of Brown: "some curvature" to the right thumb and "what [he] believe[d] to be tattooing" on the robber's left arm. Viewing this video and still frame evidence along with the testimony at trial in the light most favorable to the State, the finder of fact could conclude beyond a reasonable doubt that Brown was the man who robbed EuroGyro. With respect to the sufficiency of the evidence, therefore, Brown's second assignment of error is overruled.

{¶10}   A conviction that is supported by sufficient evidence may nonetheless be against the manifest weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. This is because the issues of sufficiency and weight are "both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. With respect to the weight of the evidence, the Ohio Supreme Court has explained:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Id.* at 387, quoting Black's Law Dictionary (6 Ed.1990) 1594. When an appellate court reverses a conviction as against the manifest weight of the evidence, it views the record from the perspective of the finder of fact without affording deference to the State and disagrees with the factfinder's resolution of conflicting evidence. *See id.* Consequently, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts

in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st. Dist.1983). This is one such case.

{¶11} Benjamin Poole, who witnessed the robbery, estimated that the robber was shorter than him, between five feet six inches and five feet seven inches tall, and that he weighed about 170-180 pounds. Brown, however, is about five feet eleven inches tall and of a lean build. Mr. Poole did not notice any tattoos on the robber's body, and when asked to consider a photo array, he did not identify a suspect. Mr. Poole recognized Brown at trial because he lived across the street from the chuck wagon and Mr. Poole knew him as a customer who frequented EuroGyro on a regular basis. Mr. Poole testified that he did not think Brown was the robber.

{¶12} This Court has reviewed the video and the still frame photographs that were the subject of Detective Klein's testimony, and they do not reveal distinct similarities between Brown and the robber. They do show shadows on the robber's arm that could be explained as tattoos, but they are not clearly so. In Detective Klein's own words, the still frame photographs depict "a blur pattern down the arm." He further explained that "I can't even tell you in the video those are separate tattoos, yet in the known images [of Brown] we can see they are separate tattoos." In addition to expressing his inability to state with certainty what the video depicts, this statement makes it plain that the assumption underlying his examination of the video was that Brown is the person pictured. Indeed, Detective Klein agreed that his task as to inquire whether there "is something on the unknown to compare to something on the known." In other words, Detective Klein examined the surveillance video with Brown in mind.

{¶13} Assuming that the shadowed areas represent tattoos, the photographs seem to indicate that the robber lacked tattoos in places in which Brown has them, and there is not sufficient detail to demonstrate that the tattoos are the same. Similarly, it is not immediately apparent that the photographs represent the same curvature of the right thumbs. Significantly, the record does not contain any testimony explaining the significance of the curvature, such as how frequently a curvature of this nature might be expected to occur in the population at large. Although Detective Klein testified about his expertise, methodology, and observations, pursuant to a ruling in limine he did not describe his conclusions regarding whether Brown is the man pictured on the surveillance video. In addition, Brown's own expert testified that the known images of Brown are dissimilar from the surveillance images, containing more tattoos, tattoos with different details, and different levels of consistency regarding ink patterns.

{¶14} The State introduced testimony related to a stipulated polygraph examination of Brown, the results of which were consistent with deception. The results of a stipulated polygraph examination, however, are only admissible to corroborate other evidence and to impeach the defendant. *State v. Souel*, 53 Ohio St.2d 123 (1978), syllabus. The testimony of a polygraph examiner does not tend to prove or disprove any element of the crime. *Id.*

{¶15} Brown is a black male who is left-handed. He owns a gun, and he lived near the EuroGyro chuck wagon. He has tattoos on his arms and torso, and the robber might also have tattoos in some of the same places – but there is little evidence from which one could conclude that the tattoos are the same. Both may have some curvature in their thumbs, but there is no evidence in the record that this is unique among the population as a whole. The only eyewitness to the robbery does not believe that Brown is the robber. For these reasons, we conclude that this is an exceptional case in which the weight of the evidence at trial weighs heavily against the

conclusion that Brown is the person who robbed EuroGyro. Accordingly, although there was sufficient evidence supporting Brown's conviction, this Court concludes that his conviction is against the manifest weight of the evidence, and his second assignment of error is sustained in that respect.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE OTHER ACTS EVIDENCE.

{¶16} Brown's first assignment of error is moot, and we decline to address it. *See* App.R. 12(A).

### III.

{¶17} Brown's second assignment of error is sustained with respect to the manifest weight of the evidence. His first assignment of error is moot. The judgment of the Summit County Court of Common Pleas is reversed, and this matter is remanded for a new trial.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

RODNEY A. BACA, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.