[Cite as *State v. Wells*, 2022-Ohio-3793.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                       :

    Plaintiff-Appellee,          : CASE NO. 21CA16

    v.                           :

ROBERT J. WELLS,                     : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____
APPEARANCES:

Joel M. Spitzer, Marion, Ohio, for appellant[1].

Nicole Coil, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:10-19-22
ABELE, J.

    **{¶1}** This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. Robert J. Wells, defendant below and appellant herein, assigns three errors for review:

        FIRST ASSIGNMENT OF ERROR:

            "THE JURY VERDICT OF GUILTY ON THE FELONIOUS ASSAULT CHARGE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

_____

    [1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY FAILING TO GRANT A
JUDGMENT OF ACQUITTAL, PURSUANT TO CRIM.R.
29(A), ON THE CHARGES OF BREAKING AND ENTERING,
GRAND THEFT AUTO, AND FELONIOUS ASSAULT, AND
THEREAFTER ENTERING A JUDGMENT OF CONVICTION OF
THOSE OFFENSES AS THE CHARGES WERE NOT
SUPPORTED BY SUFFICIENT EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"THE INDEFINITE SENTENCE ORDERED BY THE TRIAL
COURT UNDER S.B. 201, THE 'REAGAN TOKES LAW' IS
UNCONSTITUTIONAL BECAUSE IT IS A VIOLATION OF
THE SEPARATION OF POWERS DOCTRINE AND DEPRIVES
HIM OF HIS RIGHT TO A TRIAL BY JURY AND OTHER
PROCEDURAL DUE PROCESS SAFEGUARDS."

{¶2} In March 2021, a Washington County Grand Jury returned an indictment that charged appellant with (1) Count 1-failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), a third-degree felony, (2) Count 2-breaking and entering in violation of R.C. 2911.13(B), a fifth-degree felony, (3) Count 3-grand theft in violation of R.C. 2913.02(A)(1), a fourth-degree felony, (4) Count 4-felonious assault in violation of R.C. 2903.11(A)(2), a first-degree felony, and (5) Count 5-breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony. Appellant pleaded not guilty to all charges.

{¶3} The evidence adduced at the July 20, 2021 jury trial reveals that, on December 20, 2020, Decker Drilling owner Dean

Patrick Decker, III received a call from his office that someone had removed locks at his oil and gas drilling business. Staff informed Decker that "quite a bit of stuff" appeared to be missing, including a 2010 F-350 super duty diesel pickup truck with oilfield racks and bumpers. Decker's vehicles also are equipped with GPS and they located the truck in a Beverly trailer park. Because, the Washington County Sheriff's Department instructed Decker to allow law enforcement to retrieve his truck, Decker waited with the truck until Lieutenant Bryan Lockhart arrived, then gave Lockhart his spare keys and left.

{¶4} Later in the afternoon, an employee called Decker to tell him his truck had moved at a high rate of speed, then parked in a field. When Decker retrieved the truck, the body was "tore up," with a bent front and rear axle housing, missing rear tire, and the bed torn off on one side. Also, the truck's interior was "full of tools, garbage, I assume people's personal possessions that were probably stolen." The $27,000 estimate for damage did not include labor; thus, the truck had been totaled.

{¶5} In addition to the truck, Decker testified that many tools, including grinders, chop saws, cutawl saws, and various other hand tools, were missing from an outbuilding. Officers also found a few tools in the truck, such as "a grinder or two," as well

as Decker's gasoline-powered chop saw.  Decker also found (1) damage to a building door where someone tried to pry it open, and (2) broken locks and valves on a diesel fuel tank and vented steel gas cans.

{¶6}  Washington County Sheriff's Department Lieutenant Eric Hunter and Deputy Trent Gainer were dispatched to Decker Drilling and met co-owner Loretta Decker, who told them about the break-in and missing vehicle.  When Hunter learned that GPS located the vehicle and Mr. Decker had driven to the stolen truck's location, Hunter asked Decker to let law enforcement officers recover the vehicle.  Hunter also learned that, after an unidentified male walked to the truck and flashed the lights, the truck began to move and officers tried to stop the vehicle.  It became clear, however, that the vehicle did not "intend to stop," and, instead continued "going in between the houses, down around Webster's trailer court." Hunter observed officers in pursuit and also heard on the radio that the suspect struck a vehicle.  Hunter then joined the pursuit as the suspect turned north from 6th Street onto State Route 60.

{¶7}  During the pursuit, Lieutenant Hunter observed "lots of smoke coming off of the suspect vehicle, and then I started seeing parts of the tires, or part of a tire."  The pursuit continued until the truck entered a muddy field, continued through the field,

over an oil well access road, then to an agricultural road, Hunter related that four cars drove into the field and "got stuck on the muddy hillside. Suspect vehicle continued on out the agricultural road." After officers pursued the suspect on foot, they found the abandoned truck. At this point, some officers secured the stolen vehicle while others pursued the suspect with a K9. The Ohio State Highway Patrol also assisted with a helicopter. Eventually, the sheriff's department formed two teams to apprehended the suspect.

{¶8} Sheriff Department Lieutenant Bryan Lockhart, in charge of the Detective Bureau, drove to the trailer park around 10:00 a.m. to watch the stolen truck. Around 3:00 p.m., appellant unlocked the truck and "[a]ppeared to be rummaging around through the cab," returned to the trailer, then reappeared in different clothing and started the truck. Lockhart radioed dispatch to inform everyone about the truck on the move.

{¶9} Lieutenant Lockhart stated that, after Detectives Roe and McKee arrived, Roe drove behind the suspect and activated his pursuit lights. When the suspect "pause[d] at the end of the horseshoe [drive] for a short period of time," Lockhart pulled in behind Roe. At that point, the suspect took off "between the trailers," and drove through yards. Because Lockhart knew one entrance exists in the park, he drove to the entrance while other

units pursued the vehicle.

{¶10} Shortly thereafter, the suspect drove close to Lockhart's position, turned around, drove down a hill, struck the front of Detective Zide's marked vehicle, then fled over a curb and onto State Route 339. Lockhart followed the suspect on State Route 339, then onto State Route 60 and observed the suspect drive 60 to 70 mph [in a 55 mph zone]. During the chase, the truck's tire came off the rim and caused the stolen vehicle to lose control, then slide sideways and nearly strike a vehicle head-on. After the suspect regained control, he continued on State Route 60, turned into a large cornfield then exited the vehicle. At that point, officers conducted an extensive search with the assistance of a helicopter and drones.

{¶11} Detective Roe had also observed the stationary stolen truck while officers sought a search warrant and he observed the suspect take "off down between the trailers" towards 2nd Street and leave the roadway. Later, Roe helped officers form a line to attempt to apprehend the suspect.

{¶12} Washington County Sheriff's Detective Ryan Zide worked with his partner, Detective Roe, when they received a call to assist with a search warrant for a stolen vehicle. When Zide learned that officers located the truck, he drove to the scene in

his marked Ford Explorer and observed the pursuit wrap around the back of a house. Zide first tried to drive through a yard to cut off the pursuit, but as the pursuit headed toward the river, Zide tried to position his cruiser perpendicular to State Route 339 to block the vehicle's exit. At that point, Zide and his cruiser sat stationary and, although the suspect could have stopped or gone around him, he instead struck Zide's vehicle and caused Zide's K9, Rita, to be thrown around the vehicle's interior. After Zide's vehicle sustained heavy damage, Zide continued pursuit but later became stuck in mud on a hillside along with several other cruisers. Eventually, officers ended up in a foot pursuit along with a Marietta Police Department bloodhound.

**{¶13}** Washington County Sheriff's Detective Eric Augenstein testified about his location at the Beverly-Waterford bridge when he observed the stolen truck. Augenstein, the first vehicle in pursuit behind the suspect, observed the truck run through a stop sign and travel north on State Route 60. The pursuit continued from Beverly and reached "speeds of about 70, 75." The suspect eventually lost control, slid sideways in the roadway and his tire began to shred. Also, a southbound truck had to brake to exit to the side of the road to avoid a collision. The suspect regained control, left the road, then continued through a muddy field.

Augenstein and Sergeant McKee drove to State Route 83 to patrol that area, then returned to assist with the foot search.

{¶14} Washington County Sheriff's Deputy Mark Gainer testified he drove the second to last car in the pursuit on State Route 60 and he observed a rifle in the back of the truck. Sheriff's Deputy Troy Hawkins also participated in the pursuit and photographed the firearm. Later, Hawkins and Gainer secured the vehicle, took possession of the firearm and helped to remove the four cruisers stuck in the muddy field.

{¶15} Marietta Police Department K9 Officer Glen McClelland testified that when the Washington County Sheriff's Office contacted him to assist in the search, he brought Lulu, his bloodhound certified in tracking and trailing, to track the suspect. McClelland could also see the suspect's footprints in the snow. However, once McClelland learned that a drone followed appellant, he discontinued the search.

{¶16} Washington County Sheriff's Detective Robert McKee testified that he drove his marked cruiser to the trailer park to pursue the stolen truck. When officers attempted to box-in the suspect, he rammed Lieutenant Zide's cruiser and got away. McKee, who drove the third car in the pursuit, also joined the foot chase to track the suspect after he left the road and abandoned the

truck. A few days later, McKee also examined the truck and found a piece of mail addressed to appellant.

**{¶17}** Janetta Long testified that she once dated appellant, and, in December 2020, lived with Joe Heiss on 3rd Street in Beverly. When Long awoke on December 2, 2020, she found appellant, who did not live at her residence, asleep in her home. When appellant awoke later in the day, he walked to a truck to retrieve tennis shoes. Appellant, however, could not find shoes in the truck, so Jake Cousins gave him a pair of tennis shoes. When appellant returned, he told Long she should be careful because an undercover officer appeared to be present in the neighborhood. Long also testified that officers searched Heiss' home and took appellant's boots, but found no stolen items.

**{¶18}** At the close of the case, defense counsel made a Crim.R. 29 motion for judgment of acquittal and argued that no evidence exists regarding the breaking and entering or the felonious assault charges. The trial court, however, denied the motion.

**{¶19}** After hearing the evidence, the jury found appellant guilty of all counts. At sentencing, the trial court, pursuant to R.C. 2941.25, merged the breaking and entering counts, and the state elected to proceed on Count 2 (R.C. 211.13(B)/(C)). The court ordered appellant to serve: (1) a 36 month definite sentence

on Count 1, to be served consecutively to all other terms, (2) a 10 month definite sentence on Count 2, (3) a 12 month definite sentence on Count 3, (4) an eight year minimum sentence on Count 4, and (5) a five-year driver's license suspension, for an aggregate minimum/maximum term of 11 to 15 years.  This appeal followed.

## I.

**{¶20}** In his first assignment of error, appellant asserts that the felonious assault verdict is against the manifest weight of the evidence.

**{¶21}** In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119; *State v. Smith,* 4th Dist. Lawrence No. 19CA23, 2020-Ohio-5316, ¶ 31.  To satisfy this test, the state must introduce substantial evidence on all the elements of an offense so that the jury can

find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus (1988).

**{¶22}** R.C. 2903.11 defines felonious assault as: "No person shall knowingly * * * Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶23}** Appellant recognizes that the evidence presented at trial concerning the felonious assault charge included Detective Zide's testimony and photos of damage to his cruiser, but appears to challenge the credibility of this evidence and argues that, because the collision occurred while appellant fled the police, he did not actually intend to strike Zide's cruiser. Rather, appellant asserts he did not act knowingly, but instead caused accidental contact with the vehicles.

**{¶24}** When a defendant evades police and crashes a vehicle into a police cruiser, the defendant is usually deemed to have acted knowingly because it is likely that the officer would suffer physical harm from the collision. *State v. Taylor,* 8th Dist. Cuyahoga No. 90001, 2008-Ohio-3455, ¶ 68. Moreover, in the case at

bar, appellant's state of mind may be inferred from all of the surrounding circumstances, including the fact that appellant did have choices other than to ram Zide's cruiser. *See State v. Duffield,* 9th Dist. Summit No. 28615, 2018-Ohio-1220, ¶ 12 (state of mind inferred from circumstances when defendant aware officer close to cruiser and defendant drove in reverse to strike the cruiser).

**{¶25}** Many other Ohio courts have examined felonious assault convictions when defendants claimed they did not intend to strike a cruiser during a pursuit. For example, in *State v. Allsup,* 3d Dist. Hardin Nos. 6-10-06, 6-10-07, 2011-Ohio-405, the defendant, while he attempted to flee police, stopped his truck in the middle of the road. When an officer stopped behind the truck, Allsup put his truck in reverse and rammed the cruiser. After the court viewed this evidence, the court determined that a rational juror could have found that Allsup used the pick-up truck as a weapon. "A rational trier of fact could conclude that a pick-up truck-which sits substantially higher off the ground than a cruiser-hitting a parked cruiser from a distance of fifteen to twenty (15-20) feet would likely produce great bodily harm to the occupant." *Id.* at 25. Thus, as to the R.C. 2903.11(A)(2) "deadly weapon" requirement the court concluded that the state produced both sufficient

evidence and the conviction was not against the manifest weight of the evidence. *Id.*

**{¶26}** In *State v. Prince,* 8th Dist. Cuyahoga No. 61342, 1992 WL 354839 (Nov. 19, 1992), the defendant claimed he did not use his vehicle to produce death or great bodily injury because he did not intend to ram police vehicles. The Eighth District, however, cited previous cases that upheld felonious assault convictions when an accused strikes a cruiser during a high-speed chase, but claimed they merely attempted to flee. S*ee also State v. Townsend*, 8th Dist. Cuyahoga No. 56571, 1990 WL 15324 (Feb. 22, 1990), (accused accelerates toward officer but claimed did so without requisite mental state) *State v. Buford,* 8th Dist. Cuyahoga No. 57213, 1990 WL 96052 (July 12, 1990) at *2, (weight and sufficiency supports felonious assault when defendant accelerated directly at officer and could have avoided collision, but chose not to). *See also State v. Gibson*, 9th Dist. Summit No. 23881, 2008-Ohio-410, ¶ 15 (weight and sufficiency supports felonious assault when defendant rammed cruiser during pursuit), *State v. Beatty*, 10th Dist. Franklin No. 08AP-52, 2008-Ohio-5063, ¶ 13-15  (evidence sufficient for felonious assault after defendant drove stolen vehicle into cruisers), *State v. Campbell*, 8th Dist. Cuyahoga No. 93034, 2010-Ohio-261, ¶ 20, 25 (evidence supports felonious assault when, after

a chase, defendant suddenly stopped vehicle, shifted into reverse, jumped from car and sent it directly into the path of pursuing cruiser).

{¶27} As appellee notes, in the case at bar appellant does not provide a precise explanation or reason why Detective Zide's testimony should not be viewed as credible.  At trial, Zide testified he sat stationary and "trying to block * * * this exit." Zide further testified that appellant "could have stopped * * * ended the whole thing. * * * If you could have, you know, gone up and around, or you can't see it here, gone around kind of the back."  Zide also testified that his vehicle is well-marked and contained a K-9 deputy.  Detective Lockhart also testified that appellant "rammed into the front of Detective Zide's car * * * and flees out."  Detective McKee testified, "[t]he truck rammed Detective Zide's cruiser and made it away from * * * this area."

{¶28} After our review of the evidence adduced at trial, we conclude that the evidence, if believed, fully supports the conclusion that a reasonable jury could find that appellant "knowingly" attempted to cause harm to Detective Zide by ramming his cruiser with the stolen truck.  Eyewitness testimony, coupled with physical evidence, established appellant's intent to ram Zide's vehicle during appellant's attempt to escape apprehension.

Here, the appellee adduced ample evidence at trial on each element of the offense. It is the jury's task, sitting as the trier of fact, to determine and assess the credibility of any witness who appears before it and the jury may believe all, part or none of the testimony of any witness. Consequently, this verdict is not against the manifest weight of the evidence.

**{¶29}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II.

**{¶30}** In his second assignment of error[2], appellant asserts the trial court erred by failing to grant appellant's Crim.R.29(A) motion for judgment of acquittal with respect to the felonious assault charge. Appellant maintains that the evidence adduced at trial does not support the trial court's determination that sufficient evidence supports his felonious assault conviction.

**{¶31}** Under Crim.R. 29(A), a court "shall order the entry of a

---

[2] In appellant's brief's Table of Contents, his second assignment of error, in addition to felonious assault, also challenges the denial of his Rule 29 motion concerning breaking and entering. However, the argument section of his brief only addresses the felonious assault conviction.

judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A Crim.R. 29 motion tests the sufficiency of the evidence. *State v. McMurray*, 12th Dist. Preble No. CA2014-08-008, 2015-Ohio-2827, ¶ 37; *State v. Robinson,* 2015-Ohio-4533, 48 N.E.3d 109, ¶ 37 (12 Dist.). Thus, the standard of review used to assess a Crim.R. 29 motion is the same standard for a sufficiency of the evidence claim. *State v. Johnson,* 4th Dist. Ross No.14CA3459, 2016-Ohio-867, ¶ 9, *State v. Conley*, 12th Dist. Warren No. CA2013-06-055, 2014-Ohio-1699, ¶ 14, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995); *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶32} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.); *State v. Bennett*, 2019-Ohio-4937, 149 N.E.3d 1045, ¶ 46 (3d Dist.). Initially, we observe that our conclusion under appellant's first assignment of error, that appellant's felonious assault conviction is not against the manifest weight of the evidence, necessarily includes a finding that sufficient evidence supports appellant's conviction. *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010-Ohio-2556, ¶ 15. "'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005-Ohio-4942, ¶ 9, quoting *State v. Roberts,* 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17, 1997); *Gibson, supra,* 2008-Ohio-410, at ¶ 15; *State v. Smith*, 2020-Ohio-5316, 162 N.E.3d 898, ¶ 30-32 (4th Dist.); *State v. Cutright,* 4th Dist. Ross No. 21CA3749, 2021-Ohio-4039, ¶ 33.

{**¶33**} In the case sub judice, in addition to photographs

appellee presented testimony from multiple witnesses that Detective Zide's marked vehicle sat stationary when appellant chose to ram the vehicle when as officers testified, appellant could have stopped or traversed around Zide. Appellant, however, argues that, because Zide was "disoriented for a moment" before he continued in the pursuit, it somehow negates the felonious assault conviction. We disagree. Events that occurred after the felonious assault are irrelevant to our analysis.

{¶34} Therefore, we believe that our review of the record reveals that the evidence adduced at trial is sufficient to support the claim that appellant acted knowingly in fleeing law enforcement and in "ramming" Detective Zide's vehicle.

{¶35} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III.

{¶36} In his third assignment of error, appellant asserts that his indefinite sentence under the "Reagan Tokes Law" is unconstitutional. In particular, appellant argues that his sentence violates the Separation of Powers Doctrine and deprives him of his right to a trial by jury and other procedural due

process safeguards.

**{¶37}** In particular, appellant contends that the Reagan Tokes Law violates the separation of powers doctrine because it permits ODRC, an executive agency, to "unilaterally deny the [appellant] release at the expiration of [his] minimum sentence" if ODRC determines that he committed a qualifying offense while incarcerated. Appellant argues that this permits ODRC to act as "prosecutor, judge, jury, and jailer."

**{¶38}** Recently, we addressed the constitutionality of the Reagan Tokes Law i*n State v. Alexander,* (4th Dist.) Adams No. 21CA1144, 2022-Ohio-1812. As we noted in *Alexander,* the constitutionality of a statute presents a question of law we review de novo. *Alexander* at ¶ 48, citing *Hayslip v. Hanshaw*, 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 27 (4th Dist.). "Statutes are presumed to be constitutional." *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 25. "A statute will be upheld unless the challenger meets the burden of establishing beyond a reasonable doubt that the statute is unconstitutional." *Id.*

**{¶39}** In *Alexander, supra,* we held that the Reagan Tokes Law does not allow the ODRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court, citing *State v.*

*Barnes,* 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 36. Accord *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 22 (3d Dist.), appeal allowed in part by 161 Ohio St.3d 1449, 2021-Ohio-534, 163 N.E.3d 585. See also *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, ¶ 34-38 (8th Dist.), appeal allowed by 2022-Ohio-1485, 166 Ohio St.3d 1496, 186 N.E.3d 830; *State v. Floyd*, 3d Dist. Marion No. 9-20-44, 2021-Ohio-1935, ¶ 19 (facial challenge to the Reagan Tokes Law on basis it violates the separation of powers doctrine without merit); *State v. Suder,* 12th Dist. Clermont No. CA2020-06-034, CA2020-06-035, 2021-Ohio-465, ¶ 25 (Reagan Tokes Law does not violate offender's right to due process or separation-of-powers doctrine). In *Alexander,* we also rejected the argument that the Reagan Tokes Law violates the separation of powers doctrine, *Alexander* at ¶ 57, and we reject it here.

{¶40} Additionally, appellant argues that the Reagan Tokes Act violates his right to trial by jury and due process, but does not elaborate and does not cite authority. We also point out that in *Alexander* we held that the Regan Tokes Law does not violate due process. *See Alexander*, *supra,* at ¶ 57. Beyond that, we will not address arguments that appellant did not specifically develop.

{¶41} Accordingly, based upon the foregoing reasons, we overrule appellant's final assignment of error and affirm the trial

court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate

pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                                    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.