DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Sean Flynn, appeals his convictions and sentence in the Medina County Court of Common Pleas. We affirm.
 {¶ 2} On June 23, 2006, twenty-one-year-old Chelsea Owens left her "perfect" purple 1998 Pontiac Sunfire unattended in a parking spot near the T-Bar in Wadsworth, Ohio. Ms. Owens, who intended to return in a matter of minutes, left the vehicle unlocked with the keys inside. When Ms. Owens' plans changed and she returned to the parking spot early on the morning of June 24th, she found her car missing. Shortly thereafter, she was contacted by Wadsworth police regarding the vehicle, which had been located several blocks away after sustaining *Page 2 
serious damage. According to Ms. Owens' insurance carrier, the car was "totaled."
 {¶ 3} Defendant left work early on Friday, June 23, 2006, and began drinking at the home of a friend at approximately 2:00 p.m. After the pair consumed a twelve-pack of beer, they relocated to T-Bar and "drank a little more." They continued to do so at various locations until at least midnight.
 {¶ 4} Trooper Scott Smith was patrolling Interstate 76 near Wadsworth on the night of June 23rd when he noticed that a passing car had "fresh body damage" and was "making a squealing sound." Trooper Smith followed the car as it exited the freeway then gave chase when the driver ran two red lights at the bottom of the exit ramp. Trooper Smith pursued the vehicle through Wadsworth as it traveled southwest on State Route 261, joined along the way by officers from the Wadsworth Police Department and the Medina County Sheriffs Office. The driver exited the vehicle in a residential neighborhood and fled on foot into the darkness.
 {¶ 5} Within ten minutes, Wadsworth Police Officer Katherine Sipos apprehended Defendant within the search perimeter established to locate the driver of the vehicle. Trooper Smith, Officer Brian Covil, and Deputy Jason Seiberling identified Defendant at the scene as the driver. Police identified Ms. Owens as the owner of the vehicle in question. *Page 3 
 {¶ 6} On July 19, 2006, Defendant pled not guilty to one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), a felony of the third degree pursuant to R.C. 2921.33 1(B)(5)(a)(ii), and one count of theft, a felony of the fourth degree, in violation of R.C. 2913.02(A)(1). The matter proceeded to a jury trial, at the close of which Defendant was found guilty of both charges, and the trial court sentenced Defendant to consecutive one-year prison terms for each offense. This appeal followed.
 ASSIGNMENT OF ERROR I "The evidence at trial was insufficient to support the jury's guilty verdict and the convictions therefore were against the manifest weight of the evidence."
 {¶ 7} In his first assignment of error, Defendant appears to argue that his convictions are supported by insufficient evidence and are against the manifest weight of the evidence because the witnesses who testified for the State produced conflicting evidence regarding their ability to identify Defendant as the perpetrator.
 {¶ 8} When reviewing the trial court's denial of a Crim.R. 29 motion, this court assesses the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in *Page 4 
the light most favorable to the prosecution. Id.; State v.Feliciano (1996), 115 Ohio App.3d 646, 653. "In essence, sufficiency is a test of adequacy." State v. Thompkins, 78 Ohio St.3d 380, 386.
 {¶ 9} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} While it is unclear whether Defendant also asserts that his convictions are supported by insufficient evidence, our resolution of his manifest weight argument is also dispositive of sufficiency regardless. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. *Page 5 
"Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id. This case is not the rare instance in which the weight of the evidence warrants a new trial.
 {¶ 11} Defendant was convicted of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), which prohibits any person from "operating] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." He was also convicted of theft in violation of R.C.2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"
 {¶ 12} The identity of a perpetrator may be established using direct or circumstantial evidence. State v. Gorgan (Jan. 10, 1990), 9th Dist. No. 1824, at *1. While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identifying the defendant are matters affecting the weight of the evidence. Id. See, also, State v. Leach, 9th Dist. No. 22369, 2005-Ohio-2569, at ¶ 18 (concluding that the identification of the defendant by a police officer plus circumstantial identification evidence supported the jury's determination that defendant was the driver of a car during a chase that led to charges under R.C.2921.331(B)). *Page 6 
 {¶ 13} Trooper Scott Smith, who initiated pursuit of the car at issue, testified at trial that he activated the lights and siren on his cruiser after the driver of the car accelerated through a stoplight as he turned onto State Route 261 after exiting Interstate 76. According to Trooper Smith, the driver pulled off to the side of the road in apparent compliance, but then sped away as Trooper Smith approached the vehicle on foot. Trooper Smith recalled that he was within fifteen feet of the vehicle at that time and that he "could see the side of [the driver's] face and just saw he had a white hat on and [a] long-sleeve[d] shirt." He also stated that because of his angle of approach and the placement of the dashboard video camera in his cruiser, he was better able to see the driver than is reflected on the videotape admitted at trial as State's Exhibit 1.
 {¶ 14} Trooper Smith re-entered his cruiser and pursued the vehicle southwest on State Route 261. He saw the driver again when the vehicle maneuvered past him as he tried to block the driver's egress from a residential cul de sac. When the driver fled the vehicle on foot, Trooper Smith caught sight of the driver again: "[The driver] got out of the vehicle and ran right in front of me * * * I got a pretty good look at him." Based on his observations, Trooper Smith identified Defendant at the scene with certainty as the driver of the car and testified at trial that he had no doubt that Defendant was the perpetrator.
 {¶ 15} On cross-examination, Trooper Smith elaborated on his identification of Defendant, recalling that he saw the driver from a distance of *Page 7 
approximately ten feet for fifteen to twenty seconds. He acknowledged that his identification of Defendant was based in part on the clothing that he remembered the driver to be wearing, which Trooper Smith described as a white hat and long-sleeved shirt that appeared to be light green or brown in color.
 {¶ 16} Officer Katherine Sipos established a search perimeter after the driver of the vehicle fled on foot and testified that as she waited near the steps of a residence, she "saw a silhouette coming out from the shadows, sneaking out, kind of hunched over, walking real slow." She drew her TASER and ordered the subject to the ground, noting that he was out-of-breath, wet, and spattered with grass clippings. Officer Sipos identified Defendant as the individual that she apprehended within the search perimeter.
 {¶ 17} Officer Brian Covil waited with other officers in an attempt to intercept the driver and to end the chase using stop sticks. He testified that as the stop sticks were deployed the cords tangled, rendering them virtually useless and allowing the driver to maneuver around them with little difficulty. Officer Covil testified that he joined in the chase at that point. He recalled that when the vehicle came to a stop, the angle of his vehicle and the light provided by the cruisers permitted him to get "a good look at the person in general running away and the colors of the clothing that he was wearing." Officer Covil positively identified Defendant at the scene as the person who fled the vehicle. *Page 8 
 {¶ 18} Deputy Jason Seiberling joined the pursuit shortly after Officer Covil. He testified that he saw the driver of the vehicle as he evaded the stop sticks. Deputy Seiberling stated that he exited his vehicle when the driver turned off of Lyman Street into an alley, believing that the driver had entered a driveway instead. He recalled that the driver continued past him and that he was able to get a second look at the driver, illuminated by street lights and his own headlights, at that point. Deputy Seiberling identified Defendant at the scene and affirmed the identification in court.
 {¶ 19} Defendant, who testified in his own defense, maintained that the police arrested the wrong man. Specifically, Defendant testified that while he is the individual apprehended in the search perimeter, he was not the driver of the vehicle in question. Instead, Defendant asserted, he wandered into the search perimeter unwittingly as he ventured home on foot after twelve hours of heavy drinking. Defendant admitted that he was "still drunk" when he was interviewed by Detective Walser the following morning and that he told Detective Walser that he was "trying to figure out what happened" the night before. Nonetheless, Defendant insisted that he could remember his harrowing journey through Wadsworth in detail.
 {¶ 20} Defendant argues that the jury's conclusion that he was the driver of the vehicle in question is against the manifest weight of the evidence because of inconsistencies regarding the officers' recollection of the color of the driver's *Page 9 
clothing and the design and overall condition of Defendant's white hat. The testimony of the officers, however, was that each saw the driver of the vehicle and was able to identify Defendant with certainty. While the accuracy of the officers' observations with respect to the driver's attire bear on the credibility of the identification, we cannot say that the jury's resolution of the issue is so flawed as to create a manifest miscarriage of justice.
 {¶ 21} Defendant also argues that the evidence did not establish that he operated the vehicle in a manner that presented "a substantial risk of serious physical harm to persons or property," as required by R.C.2921.33 1(C)(5)(a)(ii). A substantial risk is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C.2901.01(A)(8). Serious physical harm to property includes any tangible or intangible damage to property that results in a substantial loss in value or requires a substantial investment of time, effort, or money to repair or replace, or one which "[temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." R.C. 2901.01(A)(4) and (A)(6)(b). Serious physical harm to persons includes any physical harm that carries a substantial risk of death; involves permanent incapacity or disfigurement or temporary substantial capacity or disfigurement; or that involves "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5). *Page 10 
 {¶ 22} Trooper Smith testified that he initiated pursuit of the vehicle when it passed him on Interstate 76 because he noted "fresh body damage" and "a squealing sound." As Trooper Smith followed, he noted that the driver disregarded two stoplights and accelerated onto State Route 261. He observed that the brake lights on the Pontiac did not activate. Trooper Smith explained the danger inherent in this activity:
 "Q: [H]ow would you describe that type of driving when you do not — when he exited State Route 76, careened through a red light, turned, and went through another red light immediately?
 "A: It's very dangerous and aggressive driving. Going down the ramp from the interstate, you really can't see the people coming down 261 till you're right up on them, and he didn't even slow down.
 "Q: Okay. If there had been a vehicle coming down 261, what would have happened?
 "A: It would have been a bad accident, probably killed, because he would have hit him right in his door."
Defendant discounts this testimony as "hypothetical." The fact that Defendant did not narrowly escape an actual collision with another driver, however, does automatically discount Trooper Smith's testimony.[1] See, e.g., State v. Robinson, *Page 11 
7th Dist. No. 04 JE 15, 2005-Ohio-1343, at ¶ 34.
 {¶ 23} Defendant ran two stop lights while accelerating through a blind intersection at the juncture of an interstate and a major thoroughfare. As the videotape of Trooper Smith's dashboard camera recording indicates, Defendant sped into a position dangerously close to the rear of another vehicle, then accelerated around that vehicle across a double yellow line to pass. Moments later, he wove out of his lane. Defendant led Trooper Smith from Interstate 76 into the business and residential districts of Wadsworth with little regard for his surroundings after nearly twelve hours of heavy drinking. Considering these facts, we cannot conclude that the jury lost its way in finding that Defendant's conduct posed a substantial risk of serious physical harm to persons or property. Defendant's first assignment of error is overruled.
 ASSSIGNMENT OF ERROR II "Trial counsel provided ineffective assistance of counsel. Trial counsel provided ineffective assistance of counsel in this case by failing to assist the Defendant in meeting the prosecutions [sic] case to the point where counsel's conduct so undermined the proper functioning of the adversarial process such that the trial the Defendant was provided can not be said to have produced a just result because of counsels [sic] ineffective assistance the Defendant was convicted [sic]."
 {¶ 24} This court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. See Strickland v.Washington (1984), 466 U.S. 668, 688; State v. Bradley (1989),42 Ohio St.3d 136, 142. Under this standard, a defendant must show (1) deficiency in the performance of *Page 12 
counsel "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" Strickland, 466 U.S. at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. Id. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. A defendant must demonstrate actual prejudice, and speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 27.
 {¶ 25} In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. Trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." State v. Conway,109 Ohio St.3d 412, 2006-Ohio-2815, at ¶ 115. The decision not to raise objections at trial is one such strategic choice, and this strategy does not establish that trial counsel was ineffective. Id. at ¶ 103. See, also, State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. *Page 13 
 {¶ 26} Defendant maintains that trial counsel "failed to raise any meaningful objections" during trial. The record demonstrates that this assertion is plainly inaccurate and that trial counsel represented Defendant with skill and vigor. Indeed, it appears from the record that it is Defendant's disagreement with his attorney's strategy — rather than the objective level of counsel's performance-that is his real complaint.
 {¶ 27} Even assuming that trial counsel's strategic use of objections rendered him ineffective, our review of the record indicates that Defendant did not suffer prejudice as a result. Multiple police officers testified with confidence that they identified Defendant as the driver of the vehicle after he was apprehended. In light of their testimony, we cannot conclude that the result of Defendant's trial would have been different had trial counsel objected in the manner advanced by Defendant on appeal. Defendant's second assignment of error is overruled.
 {¶ 28} Defendant's first and second assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into *Page 14 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
MOORE, J. DICKINSON, J. CONCUR.
[1] We note, however, that the State's reliance on the damage to Ms. Owens' car is misplaced. According to Trooper Smith's testimony, it was the existence of that damage that motivated him to follow Defendant, resulting in the subsequent pursuit. This preexisting damage, therefore, was not the result of Defendant's "operat[ion] [of] a motor vehicle so as willfully to elude or flee a police officer." R.C. 2921.331(B) and R.C. 2921.331(C)(5)(a)(ii). *Page 1