[Cite as *State v. Mills*, 2011-Ohio-2323.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

JAMES O MILLS, SR.

    Appellant

C.A. No.     10CA0027-M

APPEAL FROM JUDGMENT
ENTERED IN THE
WADSWORTH MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    09CRB00727-A

DECISION AND JOURNAL ENTRY

Dated: May 16, 2011

BELFANCE, Presiding Judge.

{¶1}    James O. Mills, Sr. ("Mr. Mills") appeals the judgment of the Wadsworth Municipal Court. For the reasons stated below, we affirm.

I.

{¶2}    Mr. Mills was charged with companion animal cruelty in violation of R.C. 959.131(B). After a bench trial, the court found Mr. Mills guilty and later sentenced him to a jail term of one hundred eighty days, all but ten of which were suspended, five years of probation including an anger management class, and a five hundred dollar fine. Mr. Mills appeals from that judgment, presenting two assignments of error.

II.

ASSIGNMENT OF ERROR I

"APPELLANT'S CONVICTION FOR CRUELTY AGAINST ANIMALS IN VIOLATION OF OHIO REV. CODE §959.131 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"

**{¶3}** Mr. Mills argues, in his first assignment of error, that his conviction is against the manifest weight of the evidence. We disagree.

**{¶4}** "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the factfinder's resolution of the conflicting testimony." (Internal quotations and citation omitted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. When determining whether a conviction is supported by the manifest weight of the evidence,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Cepec*, 9th Dist. No. 04CA0075-M, 2005-Ohio-2395, at ¶6, quoting *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

**{¶5}** We must only invoke the discretionary power to grant a new trial in "extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant." *State v. Flynn,* 9th Dist. No 06CA0096-M, 2007-Ohio-6210, at ¶9, citing *Otten*, 33 Ohio App.3d at 340. When reviewing a conviction pursuant to the manifest weight standard, we must determine whether the State met its burden of persuasion. *Cepec* at ¶6.

**{¶6}** Tammy Sturdivant owned a Labrador/Rottweiler mix named Penny, who lived with Ms. Sturdivant's boyfriend, James Mills, Jr., in 2009. James Mills, Sr. frequently visited his son's home, where he encountered the dog. There was ample evidence from the testimony of Ms. Sturdivant, Jerry Hoke (a co-worker of Mr. Mills' son), and Mr. Mills that Mr. Mills never liked the dog.

**{¶7}** Ms. Sturdivant testified that on the evening of August 14, 2009, she filled the five gallon bucket in the dog's kennel with water. She made arrangements for Mr. Hoke to care for the dog because she was going to be away over the weekend.

{¶8} Mr. Mills testified that he was at his son's residence the next day, splitting wood for three or four hours nearby the dog's kennel and that the dog was barking the entire time. He went over to the kennel to see "what might be wrong with her" and noticed the water in the bucket was low. The dog jumped against the fence when he came over. He testified that she "was just going completely wild. And so I got that [metal] fence post and I poked her in the hindquarters[,]" through the fence. His testimony on cross-examination was that he poked her in the front shoulder, hard enough to hurt, and she yipped. He testified that he hit the dog three times on her body, then hit her on the side of her head, then hit her two more times on her body. She then lay down at the other end of the pen. Mr. Mills then nudged her with the fence post, she bit it, and he pulled it out of her mouth. Then he "nudged her again, and she grabbed a hold of it and wouldn't let it go. So at least she wouldn't get up." He testified he then went in the kennel and filled the water bucket. He then called his son, told him he thought the dog would be all right, and left.

{¶9} Ms. Sturdivant testified that she and Mr. Mills' son were fishing on Lake Erie when Mr. Mills called to say he had hit the dog with a metal fence post and he thought the dog would be fine. She and Mr. Mills' son called Mr. Hoke, asked him to check on the dog, then began to pack up their fishing gear to return to the house. Mr. Hoke testified that he got there before they did and found the dog dead in the kennel. The dog's body was not professionally examined post-mortem. Ms. Sturdivant testified that she observed a dent in the dog's head when she moved the dog's body.

{¶10} Deputy England of the Wadsworth Police Department testified that he responded to a call at James Mills, Jr.'s residence that afternoon. He testified that a metal fence post, approximately four or five feet long and weighing a couple pounds, was stuck loosely in the

ground in the dog's kennel and that there were hairs on it consistent with the dog's fur. Deputy England testified the water bucket was nearly completely full.

{¶11} Deputy England also testified that he spoke with Mr. Mills that evening and that Mr. Mills told him that "he wanted to shut the dog up, so he hit it a few times with a metal fence post." Deputy England took a statement from Mr. Mills, which indicates that Mr. Mills hit the dog three or four times, back and front. It also indicates that the water bucket was half full and the dog was not aggressive toward Mr. Mills. Ms. Sturdivant testified that Mr. Mills said to her "'Sorry about the dog. She wouldn't shut her up, so I shut her up. You didn't need a dog like that anyway.'"

{¶12} Mr. Mills was charged and convicted under R.C. 959.131(B), which provides that "[n]o person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." The definition of companion animal includes "any dog or cat regardless of where it is kept." R.C. 959.131(A)(1). Cruelty, torture, and torment "include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief[.]" R.C. 1717.01(B); see R.C. 959.131(A)(2).

{¶13} Mr. Mills has argued in part that his conviction is against the manifest weight of the evidence because it is unclear what caused the dog's death. Although a person can be guilty of an offense under R.C. 959.131(B) by needlessly killing an animal, a person can also be found guilty for other acts that do not result in the death of the animal such as "cruelly beat[ing]" the animal. Thus, the court did not err in concluding that it was not necessary to determine what caused the dog's death.

{¶14} Mr. Mills also contends that his conviction is against the manifest weight of the evidence because he "poked," rather than "hit" the dog, that he did not cause her pain, or that such pain was necessary so that he could fill her water bucket without being bitten. According to his own testimony, Mr. Mills "hit" the dog with a four foot metal fence post, five times on her body and one time on her head. The dog "yipped" when he hit her. He continued to "nudge[]" her with the post after she lay down. He also argued that this pain was necessary to keep the dog from attacking him when he went in the kennel.

{¶15} The trial court was able to observe Mr. Mills' demeanor during his testimony and to use these observations to weigh his credibility and resolve any conflicts in the testimony. A verdict is not against the manifest weight of the evidence because the fact finder chose to believe the State's witnesses rather than the defense witnesses or chose to believe some but not all of the testimony of a particular witness. *State v. Andrews*, 9th Dist. No. 25114, 2010-Ohio-6126, ¶28. In weighing all of the evidence and assessing Mr. Mills' credibility, the trial court did not have to entirely believe Mr. Mills' version of the events and there was evidence adduced at trial which called into question Mr. Mills' credibility at trial. For example, Mr. Mills claimed that he that he needed to enter the kennel to give the dog water because her water bucket was low. However, there was no evidence indicating that the bucket was empty or to suggest that the dog showed symptoms of dehydration. Furthermore, Mr. Hoke, not Mr. Mills was responsible for caring for the dog. Because the bucket was not empty, the dog showed no symptoms of dehydration, and another person was caring for the dog that weekend, the court could have concluded that it was not necessary for Mr. Mills to enter the kennel and thus questioned has claim that he needed to hit the dog with a metal fence post so that he might safely enter the kennel.

{¶16} This Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175; see, also, *Otten*, 33 Ohio App.3d at 340. Upon a thorough review of all of the evidence, we cannot conclude that it was unreasonable for the court to find that Mr. Mills violated R.C. 959.131(B). Consequently, we cannot conclude that this is the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice.

{¶17} Mr. Mills' first assignment of error is overruled.

ASSIGNMENT OF ERROR II

"OHIO'S PROHIBITIONS CONCERNING COMPANION ANIMALS STATUTE, OHIO REV. CODE §959.131, IS UNCONSTITUTIONALLY VOID-FOR-VAGUENESS. IT FAILS TO DEFINE THE CRIMINAL OFFENSE WITH SUFFICIENT DEFINITENESS THAT ORDINARY PEOPLE CAN UNDERSTAND WHAT CONDUCT IS PROHIBITED AND IN A MANNER THAT DOES NOT ENCOURAGE ARBITRARY AND DISCRIMINATORY ENFORCEMENT."

{¶18} Mr. Mills argues, in his second assignment of error, that R.C. 959.131(B) is unconstitutionally vague and therefore void. Mr. Mills does not indicate, and we are unable to locate, any portion of the record showing that he raised this issue before the trial court. See App.R. 16(A). Consequently, Mr. Mills has forfeited his right to raise this argument on appeal and we decline to address it. *In re M.D.* (1988), 38 Ohio St.3d 149, 151; *State v. Awan* (1986), 22 Ohio St.3d 120, 120.

{¶19} Mr. Mills' second assignment of error is overruled.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

J. JEFFREY HOLLAND, Attorney at Law, for Appellee.