[Cite as *State v. Tobias*, 2014-Ohio-3979.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 13CA010497 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALEXANDRA Y. TOBIAS | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 13CR086943 |

DECISION AND JOURNAL ENTRY

Dated: September 15, 2014

---

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant Alexandra Tobias appeals from a judgment of the Lorain County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} After a Sally Beauty Supply employee's wallet and credit cards were taken from her purse and some of the credit cards were used at a nearby Target, Ms. Tobias was indicted on one count of forgery in violation of R.C. 2913.31(A)(3) and one count of receiving stolen property in violation of R.C. 2913.51(A), both felonies of the fifth degree. The matter proceeded to a jury trial. The jury found Ms. Tobias guilty of both counts and the trial court sentenced her to a total of 20 months in prison. Ms. Tobias has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT AND THEREFORE IT WAS ERROR FOR DEFENDANT TO HAVE BEEN FOUND GUILTY BEYOND A REASONABLE DOUBT AS TO EVERY ELEMENT OF FORGERY AND RECEIVING STOLEN PROPERTY[.]

**{¶3}** Ms. Tobias asserts in her first assignment of error that the State presented insufficient evidence whereby a jury could find her guilty of committing forgery and receiving property. Specifically, Ms. Tobias' argument is limited to the issue of identity, namely, whether there was sufficient evidence that she was the person seen on the videos and in the photographs from Target or whether she was in Target at all at the date and time in question.

**{¶4}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶5}** Ms. Tobias was found guilty of forgery in violation of R.C. 2913.31(A)(3) and receiving stolen property in violation of R.C. 2913.51(A). R.C. 2913.31(A)(3) states that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained

through commission of a theft offense." Ms. Tobias does not challenge any of the listed elements. Instead, Ms. Tobias has only challenged whether the State has produced sufficient evidence that she was the person who committed the crimes at issue. The State must prove beyond a reasonable doubt the identity of the perpetrator of the crime. *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶12. "The identity of a perpetrator may be established using direct or circumstantial evidence." *Id.* "[T]he credibility of witnesses and their degree of certainty in identifying the defendant are matters affecting the weight of the evidence." *Id.*

{¶6} On November 9, 2012, Linda Canterbury-Biscak was working a 5:00 p.m. to 8:00 p.m. shift at the Sally Beauty Supply store in Amherst. During her shift, two women came into the store acting "antsy" and began leaving various things on the counter as they shopped. Ms. Canterbury-Biscak became busy helping other customers as she was the only employee at that time. Ms. Canterbury-Biscak then noticed the two women leaving the store and asked if they were coming back. The women indicated they would be back after dinner to complete their purchases.

{¶7} On November 12, 2012, Ms. Canterbury-Biscak's husband asked her what she had purchased at Target recently as it appeared that some of Ms. Canterbury-Biscak's credit cards were used at the Amherst Target on November 9, 2012. At this point, Ms. Canterbury-Biscak realized her wallet was missing and thereafter contacted police. Ms. Canterbury-Biscak indicated that she kept her wallet in her purse in a separate room at the Sally Beauty Supply that was not supposed to be accessed by customers.

{¶8} Video footage was obtained from Target. At trial, Ms. Canterbury-Biscak was able to identify the woman in State's exhibit one as the person who was putting things on the

counter at the Sally Beauty Supply store. State's exhibit one was a still photograph taken from the Target video and depicted the exit. However, on cross-examination, she acknowledged that she did not have a clear recollection that the woman in the photo was the woman at Sally Beauty Supply. An additional photo, State's exhibit four, pictured a woman who was seen walking out with the woman from State's exhibit one, but Ms. Canterbury-Biscak was not able to identify the woman in State's exhibit four as having any connection to the Sally Beauty Supply store. She also testified that she never saw the two women from the Sally Beauty Supply store before November 9, 2012, or subsequent to that date. Ms. Canterbury-Biscak stated that she did not make the November 9, 2012 Target purchases and that she did not give anyone permission to use her card.

{¶9} The video footage from Target was played at trial and discussed by a Target employee, Brandon Sprague. The video begins by depicting the electronics department at 5:37 p.m. A woman in a grey hoodie with a black purse and an employee appear to be looking at iPads. They then move to register 12, and the employee begins to ring the woman's purchase up at 5:41 p.m. The woman attempted to use a Target card ending in 2366 issued to Ms. Canterbury-Biscak to fund the entire purchase, but that transaction was voided. At 5:42 p.m., while that woman is at register 12, another woman in a lighter grey sweater appears at the counter with the first woman.[1] At 5:44 p.m., while the second woman is still at the register with the first woman, the iPad is purchased in part using a MasterCard ending in 9146 issued to Ms. Canterbury-Biscak.[2] Mr. Sprague then testified that in viewing the exit camera video at 5:46

---

[1] The State's position was that this woman was Ms. Tobias.
[2] From the Target print out it appears two additional cards issued to Ms. Canterbury Biscak were used in the purchase of the one iPad: a MasterCard ending in 7304 and the Target card ending in 2366. However, as the State's witnesses focus on the 9146 card, we limit the discussion to that card.

p.m., from which it appears State's exhibits one and four were compiled, he was able to observe those same two women previously observed at the electronics counter exiting the store together, both with items in their hands. He based his identification on what the women were wearing and on the fact that one of them appeared to have an iPad. Further, he indicated that State's exhibit one, and State's exhibit four depicted still images of the women exiting the store. Based on his identifications, it is clear that the woman in State's exhibit four is the woman Mr. Sprague believed made the purchase of the iPad and the woman in State's exhibit one is the person Mr. Sprague believed appeared at the counter after the iPad purchase began. Mr. Sprague also discussed the parking lot camera photograph, State's exhibit seven. The photograph, taken at 5:29 p.m. on November 9, 2012, depicts a red vehicle.

{¶10} While not captured on video, Target print outs evidence that, during the time the first woman is seen on the video looking at iPads, Ms. Canterbury-Biscak's MasterCard ending in 9146 was used at a front register in an attempt to purchase gift cards. That purchase began at 5:36 p.m. and ended at 5:40 p.m., in what appears to have been a void transaction.[3] That card was again immediately used at that front register to make another, smaller gift card purchase. That transaction ended at 5:41 p.m.

{¶11} The officer who was initially responsible for investigating Ms. Canterbury-Biscak's complaint, obtained the video and photographs from the Target store. He testified that the evidence at trial was the evidence he received during his investigation. Additionally, he testified that he believed that there was video or photographs (that were not submitted during the trial) that depicted the two women from the photographs exiting and returning to the red vehicle

---

[3] The printout from that transaction indicates that the person sought to purchase $412 worth of gift cards. While the portion applied to Ms. Canterbury-Biscak's MasterCard ending in 9146 was approved, portions applied to Ms. Canterbury-Biscak's MasterCard ending in 7304 were declined. The end of the print out states "void transaction[.]"

depicted in State's exhibit seven. After he investigated the matter, he passed it on to the detective bureau and the photographs of the two women were sent to other detectives at area police departments to assist in identifying the women.

{¶12} Detective Kaija Jeantet of the Hudson Police Department testified that State's exhibit one was one of the photographs she was asked to examine. She identified the woman in the photograph as Ms. Tobias. Detective Jeantet also indicated that she understood that Ms. Tobias had a maroon or burgundy Oldsmobile registered in her name. Detective Jeantet also identified the woman in State's exhibit four as Alma Robinson, Ms. Tobias' mother. Detective Jeantet stated that she based her identifications on BMV photographs as she had never met either woman. However, she also testified that she based her identification on other unspecified information besides the BMV photographs.

{¶13} Additionally, Sergeant Andrew Lumpkins of the Aurora Police department identified the women in the photographs. Sergeant Lumpkins testified that State's exhibit one was a photograph of Ms. Tobias and State's exhibit four was a photograph of Ms. Robinson.

{¶14} After viewing the evidence in a light most favorable to the State, we conclude there was sufficient evidence presented whereby a trier of fact could conclude that Ms. Tobias was the woman depicted in State's exhibit one who also was seen approaching register 12 during the purchase of the iPad on November 9, 2012. Mr. Sprague stated that the woman depicted in State's exhibit one was one of the women at the counter during the iPad purchase. Moreover, both Detective Jeantet and Sergeant Lumpkins viewed State's exhibit one and identified that photograph as a photograph of Ms. Tobias. The video supports the conclusion that Ms. Tobias was the individual who approached the counter during the iPad purchase and not the person who made the iPad purchase.

{¶15} While there was not definitive evidence that Ms. Tobias made the 5:41 p.m. transaction at the front register using the MasterCard issued to Ms. Canterbury-Biscak ending in 9146, there was evidence that Ms. Tobias aided and abetted the woman identified as Ms. Robinson in using that card to purchase the iPad.[4]  Given that the surveillance video places Ms. Robinson in the electronics department while the MasterCard ending in 9146 was being used at a front register, the jury could reasonably infer that Ms. Robinson must not have had the card at that time.  Moreover, the transaction utilizing the 9146 card at the front register ended at 5:41 p.m.  At 5:42 p.m. the woman identified as Ms. Tobias is seen entering the electronics department and approaches register 12 and stands with Ms. Robinson.  Prior to that time, the video depicts Ms. Robinson only interacting with the Target employee.  At 5:44 p.m., the 9146 MasterCard is used in the purchase of the iPad.  Viewing the evidence in a light most favorable to the prosecution, a trier of fact could infer that Ms. Tobias brought Ms. Robinson the card ending in 9146 to use in the purchase of the iPad.  Accordingly, based on Ms. Tobias' limited argument on appeal, we conclude that there was sufficient evidence to find Ms. Tobias guilty of forgery and receiving stolen property.  Ms. Tobias' first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE VERDICT OF GUILTY AS TO FORGERY AND RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶16} Ms. Tobias argues in her second assignment of error that her convictions were against the manifest weight of the evidence.

{¶17} In reviewing a challenge to the weight of the evidence, the appellate court

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts

---

[4] The jury was given a complicity instruction.

in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶18}** Ms. Tobias' manifest weight argument is very similar to her sufficiency argument and essentially again asserts that the State presented no evidence that Ms. Tobias was in the Target store or made any purchases. As discussed above, there was evidence that Ms. Tobias was in the Target store. Mr. Sprague indicated that the two women at the electronics counter were the same women depicted on the exit camera. Police identified Ms. Tobias as one of the women in the photographs of the Target exit.

**{¶19}** Further, whether Ms. Tobias made any purchases using Ms. Canterbury-Biscak's credit card is not determinative of whether Ms. Tobias aided and abetted Ms. Robinson in purchasing an iPad using Ms. Canterbury-Biscak's credit card. There was evidence that would allow a trier of fact to reasonably infer that Ms. Tobias gave Ms. Canterbury-Biscak's credit card ending in 9146 to Ms. Robinson to purchase the iPad given the timing of events and the events that were actually recorded on the surveillance video.

**{¶20}** Finally, after independently reviewing the complete record, we cannot conclude the jury lost its way in relying on the police's identification of the woman in State's exhibit one as Ms. Tobias. The jury was able to hear the detective and sergeant testify and was able to view both the photographs and video and evaluate whether the police would have been able to make such an identification. After examining the same evidence, we cannot say that the jury lost its way in convicting Ms. Tobias of forgery and receiving stolen property given Ms. Tobias' limited argument. Ms. Tobias' second assignment of error is overruled.

III.

**{¶21}** In light of the foregoing, we overrule Ms. Tobias' assignments of error and affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
MOORE, J.
CONCUR.

APPEARANCES:

MALLORY J. HOLMES, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.