**[Cite as *State v. Wray*, 2026-Ohio-1538.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 30979 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEAIR RAYSHON WRAY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2022-07-2582-C |

DECISION AND JOURNAL ENTRY

Dated: April 29, 2026

HENSAL, Judge.

**{¶1}** Deair R. Wray appeals his convictions by the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** On the evening of May 26, 2022, someone shot G.S. and D.R. through the living room window of D.R.'s Cuyahoga Falls apartment. D.R. sustained one gunshot wound to her leg and recovered. G.S. sustained four gunshot wounds and died as a result of his injuries. The next morning, a crime analyst employed by the Akron Police Department received an automated email notifying the department that someone wearing an ankle monitor was in the vicinity of D.R.'s apartment at the time of the shooting. The analyst forwarded the information to police in Cuyahoga Falls, who traced the ankle monitor to an individual named D.M. Although he initially denied involvement, D.M. later told police that he and his cousins, J.M. and Mr. Wray, drove to D.R.'s neighborhood on the evening of the shooting to buy drugs. According to his statement, he

remained in the car when the other two individuals got out and, moments later, he heard gunshots. D.M. maintained that he was not involved.

{¶3}    On August 17, 2022, Mr. Wray and J.M. were indicted on charges of murder under Revised Code sections 2903.02(A) and (B), felonious assault, and improperly discharging a firearm at or into a habitation or school safety zone, along with three firearm specifications. J.M. was also charged with obstructing justice. After the indictment issued, J.M. agreed to cooperate with prosecution. A jury found Mr. Wray guilty of each charge, and the trial court sentenced him to twenty-nine years to life in prison. Mr. Wray appealed, assigning four errors for this Court's review.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. DEAIR WRAY.

{¶4}    Mr. Wray's first assignment of error maintains that the State did not produce sufficient evidence that he was the shooter. Specifically, Mr. Wray argues that there was no "[i]ndependent evidence" that he committed the crimes.

{¶5}    "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to

reasonably conclude that the essential elements of the crime were proved beyond a reasonable doubt. *Id*.

{¶6} Mr. Wray's only argument with respect to sufficiency is that the State did not produce "independent evidence" to demonstrate that he was the shooter. In the context of his appellate brief, Mr. Wray's argument appears to take issue with credibility of J.M., who testified that he accompanied Mr. Wray to R.D.'s apartment complex, heard gunshots, and saw Mr. Wray running away with a gun in his hand. This credibility argument relates to the weight of the evidence, not to the sufficiency of the evidence presented by the State. *State v. Calhoun*, 2021-Ohio-1713, ¶ 22 (9th Dist.). Mr. Wray makes a conclusory statement about the sufficiency of the evidence, but he has not developed a sufficiency argument. This Court will not construct one on his behalf. *See State v. Ross*, 2023-Ohio-1185, ¶ 10 (9th Dist.). Mr. Wray's first assignment of error is overruled.

II.

**ASSIGNMENT OF ERROR II**

MR. DEAIR WRAY'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION (CLAUSE XIV, SECTION 1, UNITED STATES CONSTITUTION).

{¶7} In his second assignment of error, Mr. Wray argues that his convictions are against the manifest weight of the evidence. This Court does not agree.

{¶8} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *See State v. Flynn*, 2007-Ohio-6210, ¶ 12 (9th Dist.). *See also State v. Treesh*, 90 Ohio St.3d 460, 485 (2001).

{¶9}    D.R. testified that she had been in an on-again, off-again relationship with Mr. Wray for over three years. The couple had lived together at one point, and she testified that Mr. Wray is the father of her son. According to D.R., the couple maintained a good relationship. D.R. testified that she did not think Mr. Wray knew about her relationship with G.S., which she characterized as a friendship. According to D.R., on the evening of the shooting, Mr. Wray sent her a text message to arrange the purchase of some marijuana. She drove to the house where Mr. Wray lived with his sister, sold him the drugs, and left. D.R. explained that her next stop was G.S.'s mother's house, where she picked G.S. up. The two returned to her apartment, where they sat on the living room couch listening to music and smoking marijuana. D.R. testified that she received a text from Mr. Wray that read "[N]o matter what, I will always love you." D.R. described the text message as "random." Immediately after she received it, shots were fired through her window. D.R. did not see who fired the shots. D.R. acknowledged that she told police that Mr. Wray knew G.S. but that she did not think there were problems between them. She also acknowledged that she left town with Mr. Wray after the shooting because he denied being the shooter.

{¶10}    A neighbor who lives five houses away from D.R.'s street testified that on the night of the shooting, she heard a noise "like people talking, moving around outside" shortly after she went to bed at 11:00 p.m. She recalled that she got out of bed and looked out of the second-floor

window that faced the road, where she saw two people moving past on the sidewalk toward the apartments. The neighbor testified that she went back to bed, but she soon heard gunshots and people yelling. She recalled that when she looked out the window again, she saw two people running past her house.

{¶11} The morning after the shooting, a crime analyst employed by the Akron Police Department received an email notification that GPS data from an ankle bracelet placed someone under supervision of the parole authority near the scene of the shooting. A representative from Oriana House identified D.M. as the individual wearing the ankle bracelet through its serial number, and she testified that the GPS placed D.M. in the area of the shooting for approximately six minutes. Detective Anthony Avalos testified that he created a map using the coordinates provided by the GPS data, which demonstrated that D.M. moved from his residence to the house where Mr. Wray lived at 10:45 p.m., where he stayed for six minutes. After that, the data indicated that D.M. moved northbound on Route 8 into Cuyahoga Falls, where a cluster of GPS "pings" was located about seven houses away from the scene of the shooting. Detective Avalos explained that one minute after a 911 call was placed, the GPS data indicated that D.M. moved south into a Cuyahoga Falls neighborhood for three minutes before heading south on Route 8 and returning to Mr. Wray's house.

{¶12} D.M. testified that he was taken into custody the day after the shooting for violating parole. He acknowledged that he lied to the police by denying all involvement and maintaining that he was deep cleaning a restaurant in Cuyahoga Falls with his cousin J.M. at the time of the shooting. He explained that when he was arrested in June and told that he was facing a murder charge, however, that he approached police with his attorney and gave a truthful account of the events. During trial, D.M. testified that he contacted J.M. on the night of the shooting because Mr.

Wray wanted a ride to pick up some drugs at D.R.'s house. After J.M. picked him up, the two went to Mr. Wray's house. D.M. recalled that J.M. was driving and Mr. Wray gave directions. D.M. testified that when they arrived in the neighborhood, they parked at the side of the street around the corner from the apartments. He explained that Mr. Wray and J.M. exited the vehicle, but he remained behind listening to music.

{¶13} D.M. testified that after a few moments, he heard several gunshots. After that, he panicked and moved to the driver's seat with the intention of leaving the area, but he explained that Mr. Wray and J.M. returned before he could do so. D.M. recalled that they ran toward him from the direction of the apartments. According to D.M., he did not see anything in Mr. Wray's hand when he got in the car, but he did see Mr. Wray "looking like he was putting something in a bag, in a little handbag strapped across his chest." D.M. also recalled that Mr. Wray said, "she was in there with that n----r G." At the time, D.M. did not know who "G" was. D.M. testified that he drove away, turning into a neighborhood where a family member lived because a police cruiser was driving up Gorge Boulevard. Because no one was home at the family member's house, they drove onto Route 8 southbound. D.M. explained that after dropping Mr. Wray off at his house, J.M. dropped him off at his own.

{¶14} J.M.'s testimony was consistent with D.M.'s account of the events. He testified that he picked D.M. up to get drugs and drove to the house where his nephew, Mr. Wray, was living. J.M. offered Mr. Wray a ride to get drugs from D.R., whom he knew through Mr. Wray. J.M. testified that Mr. Wray instructed him to park down the street. According to J.M., he and Mr. Wray got out of the car, but D.M. stayed behind. He testified that instead of approaching the house on foot from the front, Mr. Wray told him to approach by walking through a back alley and around

the side. J.M. explained that once they arrived, he waited around the side of the house while Mr. Wray walked to the front.

{¶15} J.M. testified that he heard gunshots then ran back to the parked car along the front of the house instead of through the alley. He recalled that Mr. Wray was running ahead of him, and he testified that he saw a gun in Mr. Wray's hands. J.M. stated that he did not see the gun once they got in the car. Like D.M., J.M. testified that D.M. drove the car away from the scene, stopping in the neighborhood in Cuyahoga Falls where a relative lived for a few minutes. J.M. testified that Mr. Wray contacted him after a few days. He explained that Mr. Wray was angry that he had spoken with police and wanted to know what they had discussed. J.M. explained that he did not know where Mr. Wray was when this conversation occurred. He testified that he did not know whether Mr. Wray was in a relationship with D.R., and J.M. maintained that he did not know G.S. and had no reason to kill him.

{¶16} Like D.M., J.M. acknowledged that he lied during his first encounter with police, and he admitted that he contacted the manager of a restaurant where he worked and asked the manager to lie about his whereabouts and the whereabouts of D.M. on the night of the shooting. He also admitted that because he knew that police were looking for a vehicle that matched the description of his own, he moved his car to a hotel parking lot when police came looking for him. J.M. testified that he agreed to cooperate with the State after he was indicted for murder and that, in exchange for his truthful testimony, he anticipated that the murder charges would be dismissed. J.M. maintained that he was telling the truth because he did not want to take the blame for someone else's actions.

{¶17} To the extent that this Court can discern an argument in support of Mr. Wray's second assignment of error, it appears to be that the testimony of D.M. and J.M. that identified him

as the shooter was not credible. As noted above, both witnesses acknowledged that they had lied during their initial encounters with police, and both described the charges filed against them and the circumstances that led to their testimony. As the trier of fact, the jury was in the best position to evaluate the credibility of the witnesses and was "free to believe all, part, or none of the testimony of each witness." *State v. Rose*, 2026-Ohio-340, ¶ 10 (9th Dist), quoting *Prince v. Jordan*, 2004-Ohio-7184, ¶ 35 (9th Dist.).

{¶18} Mr. Wray has not demonstrated that this is the exceptional case in which the evidence weighs heavily against his convictions. *See Otten*, 33 Ohio App.3d at 340. His convictions are not against the manifest weight of the evidence, and Mr. Wray's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY IMPROPERLY APPLYING THE RULES GOVERNING JURY QUESTIONS UNDER [CRIMINAL RULE] 24(J), RESULTING IN PREJUDICE AGAINST MR. DEAIR WRAY.

{¶19} Mr. Wray's third assignment of error argues that the trial court erred by failing to instruct the jury that they should not discuss proposed questions among themselves under Criminal Rule 24(J)(3). The record, however, demonstrates that the trial court provided this instruction to the jury before trial started. Mr. Wray's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY VIOLATING THE APPELLANT'S SPEEDY-TRIAL RIGHTS RESULTING IN PREJUDICE AGAINST MR. DEAIR WRAY.

{¶20} In his fourth assignment of error, Mr. Wray argues that his speedy-trial rights were violated. Specifically, Mr. Wray maintains that he did not waive his speedy-trial rights but was not tried until over one year after his arrest.

**{¶21}** On April 12, 2023, Mr. Wray's attorney filed a motion to continue the jury trial date that provided:

> Counsel, on behalf of Mr. Wray, is requesting that this Court continue this matter so that counsel can further review discovery which is complex and extensive in nature. He is further requesting a continuance to ensure that he receives a fair trial without any outside distractions.
>
> As this Court is aware Mr. Wray is facing a potential sentence of life without parole should be convicted of the charges as set forth in the indictment. Mr. Wray is requesting a continuance in this matter and believes it is necessary so that he can adequately defend himself and receive a fair trial. *Mr. Wray would waive time in this case*.

(Emphasis added.). No further mention was made of Mr. Wray's speedy-trial rights during the proceedings. Mr. Wray was bound by counsel's waiver of his right to a speedy trial. *See State v. McBreen*, 54 Ohio St.2d 315 (1978), syllabus. *See also State v. Taylor*, 2002-Ohio-7017, ¶ 36. His fourth assignment of error is overruled.

### III.

**{¶22}** Mr. Wray's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

ROSEL C. HURLEY, III, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.